And we move to the final case this morning, Staci Harrington v. Nancy Berryhill. May it please the Court, my name is Mahesha Subbaraman and it is my privilege today to as well as the real party in interest, the Delatory Law Office. This case is about the rule of law. In particular, whether the government is required to comply with the law of judgments, the law of attorney's liens, and the law of assignments when it decides to perform an offset against a judgment that it has been ordered to pay under the Equal Access to Justice Act. Because the answer to that question is yes, the decisions below must be reversed. In the brief time that I have, I'm going to focus the Court's attention on the two most compelling grounds for reversal, the law of judgments and the law of attorney's liens. Starting with the law of judgments, the Judgment Setoff Act is clear. It speaks in mandatory terms about what the government must do if it wants to subject a judgment against the United States to an offset. It uses the word shall. And what it says in that regard is if the government wants to subject a judgment against the United States to an offset, the government shall attempt to obtain the consent of the judgment holder to that offset. And barring that consent, the government must reduce any debt that it wants to use as the basis for the offset to a judgment. I read this claim as a statutory challenge, and you've got some constitutional challenges as well and some challenges under state law, to the administrative offset program operated by the Department of the Treasury pursuant to statutory authority conferred by the Debt Regulation. It doesn't necessarily be brought in a separate cause of action, a separate lawsuit. It doesn't have anything to do with the execution of this judgment. It's really a separate dispute between the law firm and the Department of Treasury and perhaps the Department of Education, which held one of the debts by virtue of unpaid debts on the one of these plaintiffs and the Department of Health and Human Services, which was acting on behalf of the state in helping to collect an unpaid back child support arrearage. So it's a completely separate dispute from the Social Security litigation, and it's not a Rule 69 execution procedure. It's a totally separate set of disputes that implicates other agencies of government, not the commissioner. Judge Lakes, respectfully, I have to disagree with that analysis, and the reason why is because as the government's own briefing makes clear, in an EASA proceeding, ancillary jurisdiction exists to answer the question of whether the government has paid the EASA judgment. Now, under administrative offset, the statute clearly says that the definition of administrative offset is a withholding of payment. So by definition, by the government saying in this case, we are not going to pay the judgment, it has raised a defense against paying a judgment, which falls within the ancillary jurisdiction that the government concedes exists here. So we have a judgment against the government. The government is refusing to pay that judgment on the grounds that it believes Stacey Harrington and Andrew Banks owes debts that it can perform offsets against. It's not a statutory challenge. It's simply a question of whether the government can refuse to pay the judgment. If the government paid the judgment for attorney's fees by awarding the plaintiff's credit against their outstanding debts to the government, and there's jurisdiction to decide that question, but if that question is decided against you, your other claims, your statutory claims under the Judgment Setoff Act and your Article III, your corollary Article III claim and your subject of a separate lawsuit under the APA against different agencies of government to try to invalidate this program on those various grounds. Judge Sexton, I don't believe that's correct. And the reason why is because, again, the definition, the statutory definition of administrative offset is the withholding of payment, not the paying of monies. So what the government has done here is the polar opposite of paying anyone. Right, but I'm acknowledging that there is ancillary jurisdiction to consider those questions because those relate to the interpretation and application of EJA and a determination about whether this judgment has been paid. But if we get that far and conclude that yes, the judgments for attorney's fees have been paid because of this administrative offset program, the plaintiffs received a credit against their debt. So they've been satisfied and we know from the Ratliff case that it's the prevailing party that EJA is concerned with. And if there's an assignment to the attorneys, that's a matter of contract and dealt with separately. And that's another reason why this should be the subject of a separate lawsuit. Well, speaking to that point, there's a Supreme Court case called PAMTP in which the court talks about the execution of judgments. And it says in that case that it would make no sense for a court to have jurisdiction to address the question where a court has entered a judgment in favor of A against B to then say that the court had no jurisdiction to address the question of whether B has executed the judgment by paying C, a completely different party. Here, what we have is the government paying a C party. It's paying government, alleged government creditors of the plaintiff's appellants. The attorneys involved here are also creditors of the plaintiff's appellants. And so if the government wants to argue that in this case it has satisfied the judgment by paying a creditor rather than the plaintiff directly, it's entitled to make that argument. But we're entitled to challenge that argument in terms of saying, no, you should have paid a different creditor. And the law of the Judgment Setoff Act, the law of attorney's liens, establishes why. How under the law of assignments does the law firm take pursuant to the assignment a property interest greater than that which was held by the plaintiffs here? Your Honor, we're not claiming that the law firm takes an interest greater than... You're claiming that they take free and clear of any offset, which is a greater interest than the plaintiffs possessed under the law. Not precisely, Your Honor. The right of offset continues to exist. It's just a question of who the subject of the offset is. The government can perform an offset based on any debts that the attorneys might owe once the assignment is... No, just because the ownership of the judgment has shifted because of the assignment doesn't mean the nature of the property interest changes. The law firms get only the interest that the Well, then that brings us into the universe of attorney's liens and the Judgment Setoff Act. With respect to the law of attorney's liens, Indiana law is clear that as between a valid, enforceable attorney's lien in a judgment and a counterclaim by the judgment debtor, the attorney's lien takes precedence. So the attorney gets paid first. This isn't an attorney's lien case. You hold an assignment. Your Honor, this is an attorney's lien case if the court finds that the assignment is invalid. That's why in our opening brief we presented the argument in kind of a chronological sequence. We started with assignments, then we moved on to liens, then we moved on to judgments. If this court holds the assignment is not valid, then we move on to the question of attorney's liens. Because Indiana law, by operation of law, establishes that the attorneys have a beneficial interest that they're entitled to protect in these fee awards. The question then becomes, can the government trump that beneficial interest through the offset that it's asserted? And the rule of mutuality and Indiana law governing attorney's liens establishes that they cannot do that. So returning back to the original place where I started regarding the law of judgments, I really want to emphasize this point because it's important. The Judgment Setoff Act is not simply another kind of old statute that is designed to be declaratory of certain fundamental rights of litigants when they have a judgment against the United States, and it's designed to protect separation of powers in terms of assuring that the judgments that are rendered by Article III courts are respected by coordinate branches. It seems clear from the record that both Banks and Harrington received notice from the Treasury that they were going to have this offset for their prior debts, and it also seems clear from the record that they did not follow the procedure that was given to them from the Department of Treasury if they wanted to dispute that offset. Have you waived that argument, given that they didn't follow the administrative procedure that was provided? No, we haven't, Your Honor, because the Judgment Setoff Act controls here. The Judgment Setoff Act establishes the procedure by which these judgments against the United States, which is what an EASA judgment is by definition, how they may be offset by the government. And under that statute, it's not, the onus is not on the litigant to contest the government's assertion of offset. The onus is on the government to ask for the litigant's consent to the offset, and if the onus is on the government to bring an action to reduce that debt to a judgment. Ratliff says that the fees go to the prevailing party. That's correct. Which is your client, and those fees have gone to your client via paying off other debts of theirs. You're now coming in saying that you should get that money. Do you have a conflict of interest here in arguing that? No, Your Honor, I don't believe that we do have a conflict of interest, because it's important to recognize, as courts have held in dealing with EASA, the function of EASA is to enable litigants to pay their attorneys. Otherwise, they'd be receiving an unjustifiable windfall under the statute. And that's what the Sixth Circuit held in the Turner case, in terms of explaining why it wasn't necessary to have an effective assignment in order to award fees to a particular group of litigants. So there is no conflict of interest here. The relevant question is, what are the rights of the litigants, and what are the rights of the attorneys in this context? The Judgment Setoff Act establishes that it's the right of the litigant to hold the government to proving any debt that it wants to use as a basis for an offset against a judgment. And then the law of attorneys' liens establishes that there is a lack of mutuality to the extent that the government wants to take a judgment it might have against a litigant on the one hand, and offset it against a lien-encumbered judgment on the other. And maybe you've addressed it, but what about the Administrative Procedure Act and bringing it under that? Well, Your Honor, there are two problems with that. The first problem is that, as we've pointed out in the May 2018, 28-J letter that we filed with the court, the government's offsets have made it impossible for Stacey Harrington to find a lawyer. Because any lawyer looking at this case basically says, well, she has debts, there's no possibility of an EASA award. So there's a practical obstacle to doing that. The other problem is that if you think about it as a kind of a co-equal balance when it comes to jurisdiction, what the government's argument essentially here is that when it goes to a district court and says in the end of an EASA proceeding, we have a right to offset, write that into your judgment. We have a right to invalidate the assignment under the Anti-Assignment Act, write that into your judgment. And there's jurisdiction to do that. Then the government says, well, on the other hand, there isn't jurisdiction to address arguments that are anti-offset and pro-assignment. That doesn't make sense as a rule of law. If the government... Couldn't you decide that through the Administrative Procedure Act? You could decide it through the Administrative Procedure Act, but the Administrative Procedure Act is not exclusive of the way in which we can address this. We can also address this through proceedings and execution and as part of the ancillary jurisdiction that EASA provides. And more importantly, that ensures that we don't have a double standard in play when it comes to jurisdiction, where the government gets to make all the offset arguments that it wants or all the assignment arguments that it wants and prevail on them, but then all of a sudden jurisdiction disappears when the litigant or their attorney argues against those positions. I see that I'm into my rebuttal time, unless the Court has any further questions. Thank you, Counselor. Thank you. Mr. Fan, I could pronounce your name, I think, correct? I think you got it correct. Good afternoon, Your Honors. Dennis Fan, appearing on behalf of the United States. I hear that I'm a little bit loud right now. So there's one place that I want to start, and there's kind of a way that I want to crystallize what the panel's been getting at here. There are really two buckets of claims in this case. There's one bucket of claims, which is the basic EJIA procedure. And so you take that EJIA claim, you take it to judgment, and you satisfy that judgment. There's another bucket of claims, which are about a relief other than an EJIA court. Those are claims based on state law claims. Those are claims to undo unlawful agency action. That's an entirely separate bucket of claims, and those claims can be brought, as this court has acknowledged, in other forms, including through an APA action. So first, I want to talk about the first bucket of claims and some of the confusions there. EJIA says, and the plain text of it says that it requires courts to award fees to the prevailing party. The courts here entered orders in the names of the prevailing parties, and the Supreme Court has instructed courts to then pay those awards to the prevailing party. That is a routine set of payment steps that has happened here. What happened here is that SSA submitted a payment voucher to Treasury within the payment statutes, that's Section 3325 of Title 31. It contemplates that when payment happens, you also look at offsets. That's part of the payment process. So to say that there hasn't been payment made because there were offsets that occurred is just contrary to the text of those statutes. So once you look at 3325.83, that's where you get the authority to do offsets as part of the payment process. So once the court is satisfied that there have been payments made, the court's job in this case, which is essentially just a basic procedure proceeding, is complete. There's no further work for a district court to do. There's no further work for a court of appeals to do. Courts take cases to judgment, and that's the end of the day. There's one other point that I want to address, which is the Judgment Setoff Act. So there is some claim that the Judgment Setoff Act is perhaps the act that is more applicable here. That simply isn't the case. That would fly both in the face of RATLF, which held that administrative offsets were available, and also it would be sort of illogical because administrative offsets are what happened in this particular case. And so it's not clear that the Judgment Setoff Act is the right vehicle to do. In any event, the Judgment Setoff Act and the DCIA, which are the Debt Collections Improvement Act, are complementary authorities, and the DCIA makes that very clear. And Congress has included express terms for how the DCIA is meant to interact with other statutes, including the Judgment Setoff Act. So Congress has said that this section only doesn't apply, as in the DCIA only doesn't apply if there's an express prohibitory statute, and nothing in the Judgment Setoff Act is expressly prohibitory. I know the DCIA. In fact, if you look at 3716C1A, it says you shall withhold. That is equally mandatory, and so I don't think the mandatory nature of that can be a ground on which we would say the Judgment Setoff Act has to apply, especially when there's a modern way to take into account debts against the government, as well as to make payments from the government's accounts. And so I think that addresses roughly the points that the Counselors brought up, and unless this Court has further questions, I'm happy to see my time. I want to start with what Chief Justice Vinson had to say in the Heinz opinion about what the Judgment Setoff Act is. He said, it is the judicially established judgment which allows the government to reduce by and offset the judgment obtained against it, and not the administrative determination that a setoff exists or might exist. That's interpreting the Judgment in unequivocal terms about how that act operates. The government now stands before the Court and says, we can pick and choose between whether we follow the Judgment Setoff Act or employ the administrative offset procedure. But that is fundamentally inconsistent with what the Judgment Setoff Act has stood for since Congress enacted it in 1875. When the government argued Astru versus Ratliff to the Supreme Court, it said, the language of Asia is plain and clear. It must be followed. It may be inconvenient for litigants and their attorneys, but we have to follow the plain language. Well, the shoe is on the other foot now. The plain language of the Judgment Setoff Act says that if the government wants to offset a judgment, the only way it can do that is through reducing a debt to judgment if it doesn't obtain the consent of the litigant. It didn't have that here, and as a consequence, it offsets merit reversal, and the courts below erred in failing to enforce the Act. For that reason, we urge a reversal of the decisions below, unless the Court has any further questions. Thank you very much, Counsel. Thank you.